Wilfred A. Waltemade, J.
In what appears to be a proceeding of first impression, an owner and the first mortgagee *617 petition the court to discharge and remove the Commissioner of Real Estate of the City of New York as Receiver of a multiple dwelling, pursuant to section 309 (subd. 5, par. d, cl. 4) of the Multiple Dwelling Law, “ upon the ground that the said hazardous conditions have been removed and the violations have been cured ”, and upon the additional amended ground (permitted by the court at the hearing) “that the Receiver herein had failed to perform any of the duties required of him to remove the violations and restore the premises ”.
Acting under the authority of the so-called 1962 Receivership Law (Multiple Dwelling Law, § 309, subd. 5, par. c, cl. 3), the Department of Buildings of the City of New York based upon a certification of the existence of more than 100 violations of the Multiple Dwelling Law, Multiple Dwelling Code and of the Administrative Code, petitioned for and obtained an order from the court on November 22, 1963, designating the Commissioner of Real Estate of the City of New York as the Receiver of premises numbered 221 West 21st Street, New York City. The Receiver was empowered to remove the conditions in the said dwelling which constituted a serious fire hazard and a serious threat to life, health and safety. The order appointing the Receiver was affirmed by the Appellate Division, First Department (20 A D 2d 851) and by the Court of Appeals (14 N Y 2d 291).
The premises herein is a five-story rent-controlled building which had contained 10 apartments when last tenanted, prior to the appointment of the Receiver. On December 20, 1962, the Department of Buildings issued a permit to the owner authorizing the alteration of the building into one containing 20 apartments (Alteration No. 245/1961, Permit No. 3677/1961). The owner commenced work under this permit on or about July 1, 1963, continuing such work until on or about November 21, 1963. At that time, the total cost of the work in progress was approximately $30,000. The permit was renewed on September 12, 1963 for a period of one year (Permit No. 4544/1963) and again renewed on September 14, 1964, for the period expiring June 21, 1965 (Permit No. 4626/1964). It was conceded during the hearings before this court that part of the work was done while the building was tenanted and that the work continued after the building had been vacated on September 10, 1963, pursuant to an “unsafe order” issued by the Department of Buildings because of its fear of the building’s imminent collapse.
In this proceeding the court does not reach the question whether the premises should be restored to a 10-apartment *618 building or whether it should be converted into a 20-apartment structure in accordance with the filed plans which were originally approved by the Department of Buildings on December 20, 1962. That issue is not before this court. This court notes that in the hearings which culminated in the naming of the Receiver, the court there was apprised that the subject premises had been vacated, and that the owner had commenced and was performing work pursuant to the approved alteration plans and permit issued by the Department of Buildings.
In the instant proceedings by the owner of the premises, joined in by the first mortgagee, there are but two issues with which this court is concerned. One issue which this court must determine is whether the dangerous conditions, constituting the nuisance upon which the order of receivership was predicated, have been corrected or removed. Multiple Dwelling Law (§ 309, subd. 5, par. d, cl. 4) authorizes the termination of the receivership once the nuisance has been eliminated. It is conceded that since his appointment, the Receiver has had no construction work done on the premises and has confined his activities to ‘ ‘ housekeeping ’ ’ chores such as the removal of rubbish and debris and the boarding-up of the premises to prevent vandalism. Perforce the receivership, the owner and mortgagee have not had any work done at the premises since the Receiver took possession. It therefore follows that the dangerous conditions which were found to exist on November 22, 1963 continue to exist up to the present time. At the request of the court, a current reinspection of the premises was made on January 14, 1965, by inspectors of the New York City Department of Buildings, who testified at the hearings that the building is still in a hazardous state. Inspector Edward Krishok testified that ‘‘ if a fire started it would go through the entire building like a flue The court finds that the physical status of the building remains unchanged from the date the Receiver was appointed. Therefore the court determines that the movants have failed to sustain the first ground for removal and discharge of the Receiver.
The second ground urged by the movants for the termination of the receivership is predicated on the failure of the Receiver to take any steps necessary for the elimination of the hazardous conditions. The Receiver, who is the Commissioner of Real Estate of the City of New York, is not by reason of his public office immune from the duties and obligations imposed upon any other person appointed by the court as the Receiver of real property. As the Receiver of the subject premises, the Commissioner of Real Estate is an arm of the court and must *619 comply with all the court’s orders as well as with the statutory provisions which define a Receiver’s powers and obligations.
Admittedly, the Receiver has not complied with the terms of the order of appointment dated November 22, 1963. There is testimony in this proceeding that the City of New York has made funds available to the Receiver for use in remedying or removing housing violations in those premises placed in receivership under the authority of section 309 of the Multiple Dwelling Law. The purpose for the creation of the ‘ ‘ Multiple Dwelling See. 309 Operating Fund ”, was to make moneys available to carry out the legislative intent “ to compel the correction of conditions found in deteriorated or deteriorating dwellings which may cause irreparable damage to the building or endanger the life, health or safety of [its] occupants, or the occupants of adjacent properties or the general public ”, and ‘ ‘ to increase the supply of adequate, safe and standard dwelling units, the shortage of which constitutes a public emergency and is contrary to public welfare ”.
The Receiver contends that the record of this proceeding demonstrates that during the pendency of the appeal from the order of his appointment, he was stayed from performing any work to correct the violations, except those repairs required to correct fire hazards or other threats to life or safety. This stay was effective until June 4, 1964, the date on which the Court of Appeals affirmed the order appointing the Receiver.
The Commissioner of Real Estate testified that shortly after his appointment as Receiver, plans and specifications had been prepared by his department for the removal of the violations but that the issuance of the stay prevented further action.
The Receiver further testified that on or about January 13, 1965, he directed the members of his department to again proceed with the preparation of plans, the writing of specifications, and the obtaining of bids for the work necessary to make the premises safe for habitation.
There also was testimony by the owner that he had engaged in several conferences with representatives of the Department of Buildings, the Department of Real Estate and the Corporation Counsel after June 4,1964, in an effort to regain possession of the premises so that he could proceed with the necessary work. These conferences were fruitless.
Multiple Dwelling Law (§ 309, subd. 5, par. d, cl. 1) provides that the ‘ ‘ receiver shall with all reasonable speed remove the delinquent matters and deficiencies in the dwelling constituting a serious fire hazard or a serious threat to life, health or safety”. The failure of the Receiver to remedy these *620 conditions cannot be ascribed solely to Ms laxity. The stays granted by the appellate courts prevented immediate action. It should be observed, too, that the notice of motion initiating this proceeding against the Receiver was served by mail on July 30,1964. The Receiver’s cautious reluctance to draw upon the public funds for the large sums which will be required to restore the premises to legal occupancy is understandable, especially in view of the pendency of the instant proceedings to oust him.
In its decision of June 4, 1964, the Court of Appeals (14 N Y 2d 291) determined the constitutionality of section 309 of the Multiple Dwelling Law under which the Receiver was appointed. In the application of the statute, this court must focus its attention on the rehabilitation of a dangerously deteriorated multiple dwelling which constitutes a serio ns fire hazard and a threat to the life, health and safety of the general public. It is this primary consideration which overrides the laudable secondary expression of the legislative intent to ‘ ‘ increase the supply of adequate, safe and standard dwelling units, the shortage of which constitutes a public emergency”. When the premises under consideration are made safe in compliance with the Multiple Dwelling Law, then there will be an addition to our city’s proper housing.
In consideration of all of the circumstances as disclosed by the evidence in this proceeding, the court finds that the Receiver’s conduct does not warrant his removal. The court is not suggesting that the Receiver has an unlimited period of time within which to perform the duties of the office to which he was designated. On the contrary, the Receiver is to comply with the mandate of the Legislature that the ‘1 receiver proceed with all reasonable speed”. In the court’s opinion, to permit a Receiver to delay in the removal and correction of the hazardous and dangerous conditions for an unconscionable period, would be a deprivation of private property without due process of law. In the ease at bar, the Receiver’s delay has been neither unreasonable nor unconscionable.
The application herein is deMed in toto and the Receiver of subject premises, who is the Commissioner of Real Estate of the City of New York, is directed to proceed with all convenient and reasonable speed to comply with the order of the court dated November 22, 1963.
As an addenda to this decision and in the public interest, this court offers the following suggestion. Since both the owner and the first mortgagee have represented to this court that each of them has large financial resources, the Receiver should *621 give consideration to the employment of the owner, as the general contractor, to perform the work necessary to rehabilitate the premises in compliance with the applicable statutes and ordinances. The costly work which is required to be performed on these premises could be done under the supervision of the Receiver, and then paid for directly out of the owner’s private funds, releasing a like large sum of public funds for use by the Commissioner of Real Estate in rehabilitating other slum properties in receivership, where the owners and/or mortgagees are financially unable to do the restoration work. According to the Department of Real Estate of the City of New York, there is ample precedent for the employment of an owner or mortgagee as general contractor in this instance.